## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSEPH G. FENO, | |
| Plaintiff, | CIVIL ACTION NO. 3:20-CV-02242 |
| v. | (MEHALCHICK, M.J.) |
| JOSHUA OLIVER, et al., | |
| Defendants. | |

### MEMORANDUM

Presently before the Court is a partial motion for summary judgment filed by Defendants the Commonwealth of Pennsylvania and Pennsylvania State Police ("PSP") ("Moving Defendants") on August 15, 2022. (Doc. 49). This case was initiated by Plaintiff Joseph G. Feno ("Feno"), by filing a complaint against Defendants Commonwealth of Pennsylvania, PSP, and Pennsylvania State Troopers Joshua Oliver and Tyler O'Shura (collectively, "Defendants") on December 1, 2020, pursuant to 42 U.S.C. § 1983. (Doc. 1). In his amended complaint, Feno brings Section 1983 claims against Troopers Oliver and O'Shura, and claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et. seq.*, and Rehabilitation Act ("RA"), 29 U.S.C. § 701, *et seq.*, against Moving Defendants. (Doc. 23). On March 25, 2021, the parties consented to proceed before the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (Doc. 13; Doc. 14).

For the reasons stated herein, the partial motion for summary judgment will be GRANTED in part and DENIED in part. (Doc. 49).

I.   **SUMMARY OF MATERIAL FACTS**

This factual background is taken from Moving Defendants' statement of material facts

and accompanying exhibits. (Doc. 50; Doc. 52). Pursuant to Local Rule 56.1, Feno has provided his response to Moving Defendants' statement of facts and has provided accompanying exhibits. (Doc. 53). Where Feno disputes facts and supports those disputes in the record, as required by Local Rule 56.1, those disputes are noted. Pursuant to Local Rule 56.1, the Court accepts as true all undisputed material facts supported by the record. Where the record evinces a disputed fact, the Court will take notice. In addition, the facts have been taken in the light most favorable to Feno as the non-moving party, with all reasonable inferences drawn in his favor.

A. PROCEDURAL HISTORY

On December 1, 2020, Feno initiated this civil rights action by filing a complaint, alleging violations of 42 U.S.C. § 1983 against Troopers Oliver and O'Shura. (Doc. 1). On March 4, 2021, Troopers Oliver and O'Shura filed an answer to the complaint. (Doc. 9). On December 2, 2021, Feno filed the amended complaint, asserting claims against all Defendants. (Doc. 23). In Count I, Feno alleges Troopers Oliver and O'Shura violated his Fourth Amendment right to be free from unreasonable searches and seizures and due process rights under the Fourteenth Amendment. (Doc. 23, ¶¶ 26-29). In Counts II and III, Feno alleges Moving Defendants' actions and inactions violated the ADA and RA as a 302 Mental Health Warrant issued for Feno makes him a qualified individual. (Doc. 23, ¶¶ 30-48). For relief, Feno requests monetary damages and attorneys' fees. (Doc. 1, at 10). On February 1, 2022, Defendants filed an answer to the amended complaint. (Doc. 32).

On August 15, 2022, Moving Defendants filed the instant motion for summary judgment. (Doc. 49). The motion has been fully briefed and is now ripe for disposition. (Doc. 50; Doc. 51; Doc. 52; Doc. 53; Doc. 54; Doc. 57).

B. Factual Background

On December 6, 2019, Feno and his wife went to the doctor for checkups. (Doc. 50, ¶ 1; Doc. 23, ¶ 8; Doc. 32, ¶ 8). At the doctor's office, Feno spoke about his depression from living with diabetes for 40 years and he admitted to having suicidal thoughts. (Doc. 50, ¶ 2; Doc. 23, ¶ 8; Doc. 32, ¶ 8). Feno's doctor called in a 302 Mental Health Warrant to make sure that Feno was not suicidal.[1] (Doc. 50, ¶ 3; Doc. 23, ¶¶ 8-10, 34; Doc. 32, ¶¶ 8-10, 34). Feno received a call, lasting approximately one minute, from the police barracks at approximately 1:44 p.m.[2] (Doc. 50, ¶ 4; Doc. 23, ¶ 11; Doc. 32, ¶ 11). Defendants Oliver and O'Shura arrived at Feno's home at approximately 4:30 p.m. on December 6, 2019, to effectuate the 302 Mental Health Warrant.[3] (Doc. 50, ¶ 5; Doc. 23, ¶¶ 13, 34; Doc. 32, ¶¶ 13, 34). The parties dispute the events occurring after Defendants Oliver's and O'Shura's arrival at the Feno residence and prior to the arrest of Feno; these factual disputes remain at issue for

---

[1] Feno admits this assertion, further stating that Defendants no longer possess the 302 Mental Health Warrant that applied to Feno. (Doc. 53, ¶ 3; Doc. 53-4; Doc. 53-5, ¶¶ 1-2). Feno contends the document he relies on indicates Defendants had possession of a document that stated that Feno was "severally mentally disabled," which establishes Feno was disabled within the meaning of the ADA and RA because he was, at a minimum, "regarded as disabled." (Doc. 53, ¶ 3; Doc. 53-4; Doc. 53-5, ¶¶ 1-2). In addition, Feno states "while defendants may dispute this, further evidence that Mr. Feno was a qualified individual under both statutes is that Mr. Feno was told he was being arrested for 'mental retardation.'" (Doc. 53, ¶ 3; Doc. 53-12, Feno Depo. Tr. 36:6-7, Dec. 3, 2021; Doc. 53-6; Doc. 53-7, ¶ 34).

[2] Feno admits this assertion but disputes "the added 'facts' which defendants include from their Answer may not be considered because they are not in any sort of evidentiary form." (Doc. 53, ¶ 4; Doc. 23, ¶ 11); *see* Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."); *TIG Ins. Co. v. Tyco Int'l Ltd.*, 919 F. Supp. 2d 439, 450 (M.D. Pa. 2013) ("It is well-established that evidence that would be inadmissible at trial is inadmissible when deciding a motion for summary judgment.").

[3] Feno admits this assertion but disputes the "extraneous allegations" contained in Defendants' Answer. (Doc. 53, ¶ 5).

resolution by trial by jury.[4] (Doc. 50, ¶ 6; Doc. 23; Doc. 32). Any alleged action taken by any of Troopers Oliver and O'Shura at the time of Feno's arrest indicates that the responding troopers perceived Feno as combative, resisting arrest, and as a danger to himself and others.[5] (Doc. 50, ¶ 7; Doc. 52-3, at 4-17). Feno was charged with resisting arrest and disorderly conduct. (Doc. 50, ¶ 8; Doc. 23, ¶ 23; Doc. 32, ¶ 23).

Cadets are taught at the Pennsylvania State Police Academy, where the Academy program lasts between six and seven months; cadets reside at the Academy and receive intensive training twenty-four hours a day, seven days a week; and the cadet training curriculum includes both classroom and practical training.[6] (Doc. 50, ¶ 9; Doc. 52-1, ¶ 4). Members of the Bureau of Training and Education provide particularized instruction to both cadets and active members regarding contacts with specific categories of persons within the communities they serve, which includes the presentation of training programs relative to

---

[4] Feno admits in part and disputes in part this assertion. (Doc. 53, ¶ 6). Feno asserts that "[w]hile the parties are not in agreement as to all events occurring after defendants Oliver and O'Shura arrived at Mr. Feno's home, they agree on at least the following." (Doc. 53, ¶ 6). Noting his agreement with aspects of Defendants Trooper Oliver's and O'Shura's testimony, Feno cites to the deposition transcripts of Defendants Troopers Oliver and O'Shura. (Doc. 53, ¶ 6, n.3).

[5] Feno disputes this assertion, but does not provide record support for the denial. (Doc. 53, ¶ 7). Where record support for opposition is lacking, facts are deemed undisputed. *See Goode v. Nash*, 241 F. App'x 868, 869 (3d Cir. 2007) ("[A]lthough the party opposing summary judgment is entitled to 'the benefit of all factual inferences in the court's consideration of a motion for summary judgment, the nonmoving party must point to some evidence in the record that creates a genuine issue of material fact,' and 'cannot rest solely on assertions made in the pleading, legal memoranda or oral argument.'") (internal quotations omitted).

[6] Feno disputes this assertion, but does not provide record support for the denial. (Doc. 53, ¶ 9). Where record support for opposition is lacking, facts are deemed undisputed. *See Goode*, 241 F. App'x at 869.

emotion control strategies and interactions with those experiencing mental health concerns.[7] (Doc. 50, ¶ 10; Doc. 52-1, ¶ 8). The training provided to cadets regarding emotional control, decision-making, and interactions with those experiencing mental health concerns includes, but is not limited to:

A. Law Enforcement Active Diffusion Strategies ("LEADS"): eight (8) hours of classroom and scenario-based instruction taught by PSP instructors.

B. Identifying Signs and Symptoms of Mental Illness: four (4) hours of classroom instruction taught by personnel from the Pennsylvania Psychiatric Institute at Penn State University.

C. Autism Awareness: two (2) hours of classroom instruction taught by personnel from the Autism Services, Education, Resources, and Training Collaborative.

D. PA Mental Health Laws: two (2) hours of classroom instruction taught by PSP Academy Criminal Law Unit Instructors

E. Practical Application / Scenario-Based Training

(Doc. 50, ¶ 11; Doc. 52-1, ¶ 9).[8]

Every cadet receives no less than sixteen (16) hours of scenario-based training, which in part involves the utilization of de-escalation strategies and/or a role player suffering from a mental health emergency.[9] (Doc. 50, ¶ 12; Doc. 52-1, ¶ 10). Since 2020, cadets also receive training

---

[7] Feno disputes this assertion and argues that Troopers Oliver and O'Shura testified that did not receive specialized training on serving a 302 warrant and Trooper Oliver testified that it is common to use force in serving 302 involuntary mental health warrants. (Doc. 53, ¶ 10; Doc. 53-10, Oliver Depo. Tr., Nov. 30, 2021; Doc. 53-11, O'Shura Depo. Tr., Nov. 30, 2021).

[8] Feno disputes this assertion, but does not provide record support for the denial. (Doc. 53, ¶ 11). Where record support for opposition is lacking, facts are deemed undisputed. *See Goode*, 241 F. App'x at 869.

[9] Feno disputes this assertion, but does not provide record support for the denial. (Doc. 53, ¶ 12). Where record support for opposition is lacking, facts are deemed undisputed. *See Goode*, 241 F. App'x at 869.

specifically on PSP AR 7-3, Incidents Involving Persons with Mental Illness/Mental Health Emergencies.[10] (Doc. 50, ¶ 13; Doc. 52-1, ¶ 11). Based on an analysis of Department use of force incidents, use of force training curriculums are revised in the last few years to include additional hours of training in communications and de-escalation strategies, deployment of conducted energy weapons, response to mental health emergencies, and critical thinking and use of force decision-making.[11] (Doc. 50, ¶ 14; Doc. 52-1, ¶ 14).

Members of the PSP receive Mandatory In-Service Training ("MIST"), which is comprised of five to eight hours of training on an annual basis, and is required training for all enlisted members of PSP.[12] (Doc. 50, ¶ 15; Doc. 52-2, ¶ 3). The MIST training program is designed to keep members appraised on ongoing developments to case law, receive additional training pertinent to issues and situations faced by law enforcement, re-qualify members on various equipment, and provide practical training to members to keep their skills up to date.[13] (Doc. 50, ¶ 16; Doc. 52-2, ¶ 4). A portion of the training provided to members regarding

---

[10] Feno disputes this assertion, but does not provide record support for the denial. (Doc. 53, ¶ 13). Where record support for opposition is lacking, facts are deemed undisputed. *See Goode*, 241 F. App'x at 869. In addition, Feno disputes the relevance of Burk's declaration because it discusses only training cadets receive since 2020 and Defendants Troopers Oliver and O'Shura were "full-fledged state troopers, not cadets, in 2019." (Doc. 53, ¶ 13).

[11] Feno disputes this assertion, but does not provide record support for the denial. (Doc. 53, ¶ 14). Where record support for opposition is lacking, facts are deemed undisputed. *See Goode*, 241 F. App'x at 869.

[12] Feno neither admits nor denies this assertion. Feno states that Corporal Evans' declaration "only discusses generally training that members of the state police receive. Absent from the Evans' declaration is anything about any relevant training received by defendants Oliver or O'Shura." (Doc. 53, ¶ 15).

[13] Feno neither admits nor denies this assertion. Feno states: "What the 'MIST training program is designed' for is not relevant to this case, and has no bearing on Oliver or O'Shura, nor is there any indication that Oliver or O'Shura received any training relating to service of 302 mental health warrants." (Doc. 53, ¶ 16).

emotional control, decision-making, and interactions with those experiencing mental health

concerns includes, but is not limited to:

A. MIST 2010: Patrol Response to Suicide Bombers: two (2) hours of classroom instruction.

B. MIST 2012: Disability, Aggression, and the Assault Cycle: one (1) hour of classroom instruction.

C. MIST 2013: Missing Endangered Persons Advisory System: one (1) hour of classroom instruction.

D. MIST 2015: Response Enhancing Arousal Control Techniques: one (1) hour of classroom instruction, authored by PSP Psychologist.

E. MIST 2016: Tactical Communication and Conflict Management: one (1) hour of classroom instruction.

F. MIST 2016: Understanding and Effectively Engaging Individuals with Traumatic Brain Injuries: two (2) hours of classroom instruction, authored by PSP Psychologist.

G. MIST 2017: Tactical Communication Review: one (1) hour of classroom instruction.

H. MIST 2017: Ti® Use of Force Simulation Training and Use of Force Reaction Training: three (3) hours of scenario-based training that involves the use of de-escalation strategies and/or a role player suffering from a mental health emergency.

I. MIST 2018: Practical De-Escalation Strategies: one (1) hour of classroom instruction.

J. MIST 2018: Use of Force Stress Response Training: two (2) hours of scenario-based training that involves the use of de-escalation strategies and/or a role player suffering from a mental health emergency.

K. MIST 2019: Use of Force Response Training: two (2) hours of scenario-based training that involves the use of de-escalation strategies and/or a role player suffering from a mental health emergency.

L. MIST 2020: in-person instruction cancelled due to COVID pandemic.

M. MIST 2021: two (2) hours of training on mental health response.[14]

(Doc. 50, ¶ 17; Doc. 52-2, ¶ 5).

II.   **LEGAL STANDARD**

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

A federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 278 (3d Cir. 2000). The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, the court's function is not to make credibility

---

[14] Feno neither admits nor denies this assertion. Feno states: "It is denied that a list of MIST training from 2010 to 2021 has any bearing on this case. There is nothing in Evans' declaration indicating training on 302 mental health warrants, let alone any training received by Oliver or O'Shura." (Doc. 53, ¶ 17).

determinations, weigh evidence, or draw inferences from the facts. *Anderson*, 477 U.S. at 249. Rather, the court must simply "determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

"Although the party opposing summary judgment is entitled to the 'benefit of all factual inferences in the court's consideration of a motion for summary judgment, the nonmoving party must point to some evidence in the record that creates a genuine issue of material fact.'" *Velentzas v. U.S.*, No. 4: 07-CV-1255, 2010 WL 3896192, at *7 (M.D. Pa. Aug. 31, 2010) (quoting *Goode,* 241 F. App'x at 868) (citation omitted); *see also Beenick v. LeFebvre,* 684 F. App'x 200, 206 (3d Cir. 2017) (stating the purpose of requiring parties to cite to particular parts of the record in their briefs about a motion for summary judgment is to "assist the court in locating materials buried in a voluminous record") (quoting Fed. R. Civ. P. 56(c)(1)(A)). The opposing party "cannot rest solely on assertions made in the pleadings, legal memorandum, or oral argument." *Velentzas*, 2010 WL 3896192, at *7 (quoting *Goode,* 241 F. App'x at 868). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Jakimas v. Hoffmann–La Roche, Inc.,* 485 F.3d 770, 777 (3d Cir. 2007).

III. **DISCUSSION**

A. MOVING DEFENDANTS ARE NOT ENTITLED TO SOVEREIGN IMMUNITY.

First, Moving Defendants contend summary judgment is proper to the extent Feno seeks relief against Moving Defendants under Title I of the ADA because such a claim is

barred by sovereign immunity. (Doc. 51, at 11). In opposition to the partial motion for summary judgment, Feno argues that sovereign immunity is inapplicable in this case because he seeks relief under Title II of the ADA, not Title I. (Doc. 54, at 3). Feno correctly contends Moving Defendants enjoy no sovereign immunity from lawsuits brought under Title II of the ADA and the RA. (Doc. 54, at 4) (citing *Mohney v. Pennsylvania*, 809 F. Supp. 2d 384, 398 (W.D. Pa. 2011).

Title I of the ADA in relevant part provides: "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement or discharge of employees, employee compensation, job training, and other terms, conditions and privileges *of employment.*" 42 U.S.C. § 12112 (emphasis added). Alternatively, Title II of the ADA provides in relevant part: "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be *denied benefits of the services, programs or activities of a public entity* or be subjected to discrimination by any such entity." 42 U.S.C. § 12121 (emphasis added). Title II of the ADA abrogates state sovereign immunity when it comes to state conduct that violates the Constitution. *United States v. Georgia*, 546 U.S. 151, 159 (2006). Courts in the Third Circuit use the following three-step analysis to apply this principle:

> (1) identify which aspects of the State's alleged conduct violated Title II; (2) identify to what extent such conduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, determine whether Congress' purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

> *Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 553 (3d Cir. 2007).

When it comes to claims of the latter category, the court must determine whether there is "a congruence and proportionality between the injury to be prevented or remedied and the

means adopted to that end." *Tennessee v. Lane*, 541 U.S. 509, 520 (2004) (quoting *City of Boerne v. Flores*, 521 U.S. 507, 520 (1997)). Under this

> "congruence and proportionality" test, the court must: (1) identify "with some precision the scope of the constitutional right at issue;" (2) examine whether Congress has identified a history and pattern of unconstitutional discrimination by the states; and (3) determine whether the rights and remedies created by the ADA against the states are congruent and proportional to the constitutional injury sought to be prevented.

*Shaw v. Pa. Dep't of Corr.*, Civ. A. No. 17-229 Erie, 2018 WL 6831148, at *5 (W.D. Pa. Dec. 28, 2018) (citing *Bd. of Trustees of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001)).

"[T]he legislative history of the ADA reveals that Congress expressly considered a pattern of such discrimination when it enacted the ADA." *Mohney*, 809 F. Supp. 2d at 397. In *Mohney*, the district court's review of this history referenced a report before Congress which "identified '[i]mproper handling and communication with handicapped persons by law enforcement personnel' as an 'area in which problems of discrimination occur.'" 809 F. Supp. 2d at 397 (quoting U.S. Commission on Civil Rights, Accommodating the Spectrum of Individual Abilities 165 (1983)). The court in *Mohney* concluded that congressional concerns could be alleviated through "congruent and proportional" responses that were not unduly burdensome, such as "[p]roviding police officers with proper training for handling mentally disabled persons." 809 F. Supp. 2d at 398. This court ultimately determined that "Title II, as applied to cases involving the interaction between law enforcement personnel and mentally disabled individuals, is a valid exercise of Congress' authority pursuant to § 5 of the Fourteenth Amendment. The Eleventh Amendment is therefore not a bar to Plaintiff's ADA claims against the Commonwealth and PSP." *Mohney*, 809 F. Supp. 2d at 398. Similarly, in this case, the Eleventh Amendment would not be a bar to Feno's Title II of the ADA and RA

claims against Moving Defendants. Therefore, the Court finds that Moving Defendants are not entitled to sovereign immunity as to Feno's claim under Title II of the ADA.

However, upon Feno's clarification and lack of opposition, to the extent that the amended complaint may be construed to raise a claim under Title I of the ADA, Moving Defendants would be entitled to sovereign immunity. Applying the "congruence and proportionality" to Title I of the ADA, the Court in *Garrett* found that "[t]he legislative record of the ADA . . . fails to show that Congress did in fact identify a pattern of irrational state discrimination in employment against the disabled." *Garrett,* 531 U.S. at 365, 368, 372–73. Instead, Congressional findings focused on employment discrimination in the private sector, and "Congress assembled only such minimal evidence of unconstitutional state discrimination in employment against the disabled." *Garrett*, 531 U.S. at 369–70. Accordingly, at the second step of the "congruence and proportionality" test, the Court held that Title I did not validly abrogate the states' sovereign immunity. *Garrett*, 531 U.S. at 375.

Accordingly, Moving Defendants' motion for summary judgment is **GRANTED** to the extent that Feno seeks to assert a cause of action against them under Title I of the ADA as they are entitled to sovereign immunity. However, Moving Defendants' motion for summary judgment is **DENIED** as to Feno's claim under Title II of the ADA.

B.  THE COMMONWEALTH IS PROPERLY JOINED.

Next, moving for summary judgment on Feno's claims against the Commonwealth, Moving Defendants first argue that the Commonwealth was improperly added as an individual defendant "via a clerical error," because the amended complaint does not distinguish that Feno brings any claim against the Commonwealth, but rather asserts claims against the PSP. (Doc. 51, at 16-17). In addition, Moving Defendants contend there is no case

or controversy between Feno and the Commonwealth because "the Commonwealth is a completely separate and distinct entity from its administrative agencies, including PSP," which means "any alleged action or inaction on the part of PSP and its employees is separate and apart from any action or inaction of the Commonwealth." (Doc. 51, at 17; Doc. 57, at 12-13). Furthermore, Moving Defendants aver that "there is no evidence that the Commonwealth was on notice that any of the policies or practices of PSP would amount to an excessive risk to the safety of [Feno]." (Doc. 51, at 17).

In opposition, Feno asserts that actions brought under Title II of the ADA arising from situations, like this one, in which unreasonable force is used against a person qualified under the ADA may be brought against both the Commonwealth and one of its agencies. (Doc. 54, at 5); *see* 42 U.S.C. § 12131(1)(A)-(B) (defining "public entity" as "any State or local government" and "any department, agency, special purpose district, or other instrumentality of a State or States or local government"). In addition, Feno explains:

> While the Amended Complaint refers to the Commonwealth and PSP as one, "hybrid" entity ("The Commonwealth of Pennsylvania, Pennsylvania State Police . . . is a state and department of a state" (Doc. 23, ¶ 6)), because the Amended Complaint pleads facts implicating both the Commonwealth and PSP for violations of the ADA, and because the Amended Complaint placed both entities on notice of allegations against them, this Court should not dismiss the Commonwealth from this action based solely on the Amended Complaint's hybrid characterization of the entity defendants.

(Doc. 54, at 6 n.4).

Furthermore, Feno claims that there is an active case or controversy between the Commonwealth and himself because he asserts that PSP failed to properly train its employees on how to handle and respond to situations with mentally disabled individuals. (Doc. 56, at 6) (citing *Broadwater v. Fow*, 945 F. Supp. 2d 574, 591 (M.D. Pa. 2013) (denying motion to dismiss where plaintiff adequately pled ADA and RA claim where he alleged Commonwealth

and PSP "failed to properly train troopers to have peaceful encounters with mentally and physically disabled persons and failed to establish a proper policy for handling such encounters" and that defendants were "well aware of [plaintiff's] disabilities and were attempting to escort him to a hospital for a mental health evaluation" and during that encounter engaged in excessive force)).

Federal Rule of Civil Procedure 20(a) provides, in relevant part:

(2) *Defendants.* Persons . . . may be joined in one action as defendants if:

> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

> (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2).

Thus, "Rule 20(a) imposes two specific requirements for the permissive joinder of defendants: (1) a right to relief must be asserted by the plaintiff against each defendant relating to or arising out of the same transaction or series of transactions; *and* (2) some common question of law or fact must be present with respect to all parties in the action (i.e. a common thread)." *Paden v. Wagner,* No. 3:16-CV-02565, 2017 WL 2390400, at *4 (M.D. Pa. Mar. 10, 2017), *report and recommendation adopted as modified,* No. 3:16-CV-2565, 2017 WL 2385346 (M.D. Pa. June 1, 2017) (quoting *Intercon Research Assocs., v. Dresser Indus.*, 696 F.2d 53, 57 (7th Cir. 1982)). "Courts have broad discretion in applying Rule 20 to reduce inconvenience, delay, and added expense to the parties and to the court, and to promote judicial economy." *Scullen v. Mahally*, No. 3:CV-16-0965, 2016 WL 3522966, at *2 (M.D. Pa. June 28, 2016); *see* 7 Charles Alan Wright, et al., Federal Practice and Procedure § 1653 at 410-12 (3d ed. 2001). Furthermore, "[w]hile the requirements of Rule 20(a) are to be liberally construed in the

interest of convenience and judicial economy, the policy of liberal application of Rule 20 is not a license to join unrelated claims and defendants in one lawsuit." *Washington v. Folino,* No. CIV.A. 11-1046, 2013 WL 998013, at *3 (W.D. Pa. Feb. 28, 2013), *report and recommendation adopted*, No. CIV.A. 11-1046, 2013 WL 980608 (W.D. Pa. Mar. 13, 2013).

The Court concludes that the Commonwealth has been properly named a Defendant in this action. First, Moving Defendants argue that because Feno did not separate the Commonwealth from the PSP in the caption of his state court filing, he never intended to sue the Commonwealth. (Doc. 51, at 16-17). However, the caption in this Court identifies the Commonwealth as a party; and the Commonwealth has not argued that it was never served. Furthermore, upon consideration of the amended complaint, it is clear that Feno intends to set forth claims against the Commonwealth and that those causes of action "aris[e] out of the same transaction, occurrence or series of transactions or occurrences," and raise a "question of law or fact common to all [D]efendants," as is required by Rule 20. (Doc. 23, at 6-10); *see* Fed. R. Civ. P. 20(a)(2). Feno brings suit against the Commonwealth and PSP for violations of the ADA and RA under failure-to-train and deliberate indifference theories of liability in relation to a singular interaction with Troopers Oliver and O'Shura. Thus, the inclusion of the Commonwealth in this action is proper under Rule 20. (Doc. 23, at 6-10).

Accordingly, the Court will deny Moving Defendants' motion for summary judgment with respect to Feno's claims against the Commonwealth.

C. Genuine disputes of material fact exists as to Counts II and III.

In Counts II and III, Feno raises a claim of disability discrimination under the ADA and the RA against Moving Defendants. (Doc. 23, ¶¶ 30-48). The crux of Feno's claim

appears to be that Moving Defendants failed to make reasonable accommodations to ensure the safe execution of the involuntary 302 Mental Health Warrant. (Doc. 23, at 6-10).

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such a disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by any such entity." 42 U.S.C. § 12132. "The *prima facie* cases for compensatory claims brought pursuant to § 504 [of the RA] and ADA are identical." *Broadwater*, 945 F. Supp. 2d at 590 (citing *Chambers ex rei. Chambers v. Sch. Dist. of Philadelphia Bd. of Educ.*, 587 F.3d 176, 189 (3d Cir. 2009)). Therefore, in order to state a claim under the ADA and § 504 of the RA, a person "must demonstrate: (1) he is a qualified individual; (2) with a disability; (3) [who] was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; (4) by reason of his disability." *Bowers*, 475 F.3d at 553 n.32; *Broadwater*, 945 F. Supp. 2d at 590. Because he seeks compensatory damages, Feno faces an additional hurdle: he must also prove "intentional discrimination." *Haberle v. Troxell*, 885 F.3d 170, 181 (3d Cir. 2018) (citing *S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 261 (3d Cir. 2013)).

The parties do not contest, for the purposes of the instant motion, that Feno is disabled or that he was entitled to the benefit of a lawful exercise of police powers. Rather, Moving Defendants argue that Feno has not alleged that he was discriminated against on the basis of his disability. (Doc. 51, at 19). In addition, Moving Defendants submit that Feno has not alleged that they acted with intentional discrimination. (Doc. 51, at 20). The Court disagrees.

First, Moving Defendants move for summary judgment because there is no evidence that any action or force was taken against Feno "because of," or "by reason of," his disability.

(Doc. 51, at 11-12, 19). Rather, Moving Defendants argue that "any alleged action taken by any of the state troopers at the time of [Feno]'s arrest indicates that the responding troopers perceived [Feno] as combative, resisting arrest, and as a danger to himself and others." (Doc. 51, a 19). In opposition, Feno argues that a jury could find that he was discriminated against because of his disability in violation of the ADA and RA as Feno is a qualified individual under the ADA and the troopers used unreasonable force on him while executing a 302 Mental Health Warrant and regarding him as "severely mentally disabled." (Doc. 54, at 9). In response, Moving Defendants contend Feno's arguments fail because his reliance on the deposition testimony by Troopers Oliver and O'Shura, which was given in an individual capacity, cannot bind Moving Defendants. (Doc. 57, at 14). Moving Defendants assert "[t]he lack of knowledge that any of its policies relating to its training combined with its robust initial and continuing training for its cadets and members illustrates that Defendants are not deliberately indifferent to a potential risk of harm to an alleged deficient policy for training." (Doc. 57, at 18).

Upon consideration of the parties' arguments and the amended complaint, the Court finds that factual disputes exist regarding whether Feno was denied a particular benefit or service to which he was entitled as a result of his disability. Contrary to Moving Defendants' assertions, Feno has specifically alleged that "[d]espite knowing of the obvious risk that its troopers may discriminate on the basis of disability and/or fail to make reasonable accommodations during the service of 302 Mental Health Warrants, the Commonwealth of Pennsylvania, [PSP] intentionally chose not to provide its troopers with specialized trainings for the service of 302 Mental Health Warrants." (Doc. 23, ¶ 41). Indeed, Troopers Oliver and

O'Shura were purportedly well aware of Feno's disabilities and were attempting to escort him to a hospital for a mental health evaluation. (Doc. 23, ¶¶ 13-15). Feno further alleges:

> Defendant Commonwealth of Pennsylvania, [PSP] acted with deliberate indifference by failing to properly train troopers to have peaceful encounters with mentally disabled persons and by failing to establish adequate policies for handling such encounters. Commonwealth of Pennsylvania, PSP further acted with deliberate indifference by failing to modify police practices to reasonably accommodate subjects of 302 Mental Health Warrants pursuant to the ADA.

(Doc. 23, ¶ 43).

As the Court finds that a factual dispute exists as to whether Feno was discriminated against because of his disability, this is for the jury, not the Court, to decide and it would be inappropriate to grant either party relief as a matter of law with respect to Feno's ADA and RA claim.

Second, Moving Defendants argue that summary judgment is warranted because Feno has not established that they intentionally discriminated against him on the basis of his disability. (Doc. 51, at 20). Moving Defendants argue that failure to create policies does not amount to Moving Defendants' deliberate indifference under the ADA and RA. (Doc. 51, at 12) (citing *Haberle v. Troxell*, 885 F.3d 170 (3d Cir. 2018)). In addition, Moving Defendants argue that there is no evidence that they were obviously aware of any policies regarding the interaction and care of individuals with mental health disabilities or that the current training would likely result in constitutional violations, and that Feno failed to allege proof of more than one instance of a lack of training or supervision as required to establish deliberate indifference. (Doc. 51, at 22, 24). Rather, Moving Defendants aver "PSP's operative and related training policies have been revised in recent years to include additional training in communications and de-escalation strategies, deployment of conducted energy weapons, response to mental health emergencies, and critical thinking and use of force decision

making," and that, even so, "any failure to adopt or amend PSP policies does not create Defendants' deliberate indifference related to the underlying conduct." (Doc. 51, at 22-23). In opposition, Feno asserts that Moving Defendants' acted with deliberate indifference in violation of the ADA by failing to have policies in place to provide PSP troopers with specialized training in dealing with 302 Mental Health Warrants. (Doc. 54, at 14).

"[C]laims for compensatory damages under . . . the ADA also require a finding of intentional discrimination," which requires proof, at minimum, of deliberate indifference, *S.H. ex rel. Durrell*, 729 F.3d at 261-63, which may be pleaded by showing that the defendant failed to "adequately respond to a pattern of past occurrences of injuries like the plaintiff['s]," *Beers-Capitol v. Whetzel*, 256 F.3d 120, 136 (3d Cir. 2001). To establish intentional discrimination, a plaintiff can meet that obligation in two different ways:

> first, by alleging facts suggesting that the existing policies caused a failure to "adequately respond to a pattern of past occurrences of injuries like the plaintiffs,'" or, second, by alleging facts indicating that she could prove "that the risk of . . . cognizable harm was 'so great and so obvious that the risk and the failure . . . to respond will alone' support finding" deliberate indifference. *Beers-Capitol v. Whetzel*, 256 F.3d 120, 136-37 (3d Cir. 2001) (quoting *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989) (in the context of § 1983 suits by prison inmates) ); *see S.H. ex rel. Durrell*, 729 F.3d at 263 n.23 (noting that the standard for proving deliberate indifference being adopted for the ADA context "is consistent with our standard of deliberate indifference in the context of § 1983 suits by prison inmates").

*Haberle*, 885 F.3d at 181–82.

To prove an ADA violation against a police officer, the Third Circuit noted that a "successful ADA claim demands more than an allegation of an arrest of a qualified individual with a disability" - "there must also have been a failure to make reasonable accommodations." *Haberle*, 885 F.3d at 181 n.11 (citations omitted). The Third Circuit further noted, "The analysis as to what is 'reasonable' under the circumstances, including exigent circumstances,

and as to how their determination is reached, presents complicated issues." *Haberle*, 885 F.3d at 181 n.11. Because the Third Circuit dismissed the ADA claim for pleading deficiencies in *Haberle*, the court noted it was not the occasion to consider the analytical approach to an ADA claim arising from an arrest. *Haberle*, 885 F.3d at 181 n.11. The court continued to note, however, that "in the future, we may need to consider whether and under what circumstances it is reasonable to require police officers to make accommodations during an arrest when they face an exigent threat." *Haberle*, 885 F.3d at 181 n.11

The *Haberle* court concluded that the plaintiff failed to establish deliberate indifference because she relied only on general allegations that the municipality had a history of violating residents' civil rights and offered "only hazy support for that statement." *Haberle*, 885 F.3d at 182. Further, the court found that the plaintiff failed "to allege that the risk of harm was 'so great and so obvious,' as to obviate the need for her to allege facts pertaining to the Borough's knowledge" because the plaintiff claimed only that the Borough's policies, related to training policies and procedures, fell below "nationally recognized standards for police department operations' with regard to those with mental illness." *Haberle*, 885 F.3d at 182.

Here, the Court will deny without prejudice Moving Defendants' motion for summary judgment on Feno's ADA and RA violation claims. Feno claims "deliberate indifference" by Moving Defendants in "failing to properly train troopers to have peaceful encounters with mentally disabled persons and by failing to establish adequate policies for handling such encounters." (Doc. 23, ¶ 43). In addition, Feno asserts Moving Defendants "acted with deliberate indifference by failing to modify police practices to reasonably accommodate subjects of 302 Mental Health Warrants pursuant to the ADA." (Doc. 23, ¶ 43). Feno maintains that neither Trooper Oliver nor Trooper O'Shura received any specialized training

from the Commonwealth or PSP regarding the service of 302 Mental Health Warrants, and that "[t]he only training Oliver and O'Shura had was to serve 302 Mental Health Warrants in the same manner as any other arrest, pursuant to their general law enforcement training." (Doc. 23, ¶ 42). In support of his pleadings, Feno contends Troopers Oliver and O'Shura testified that they received no training on the service of 302 Mental Health Warrants and Moving Defendants "offer zero contradictory evidence." (Doc. 54, at 12). Because a jury must assess the acts to determine what occurred during Feno's encounter with Troopers Oliver and O'Shura, along with the Commonwealth and PSP's training practices of its troopers, the Court cannot conclude as a matter of law whether Defendants violated the ADA or RA on the present record.

Accordingly, the Court will deny Moving Defendants' motion for summary judgment with respect to Count II and III.

       D.  F<small>ENO'S REQUEST FOR PUNITIVE DAMAGES IS DISMISSED.</small>

Finally, Moving Defendants assert that summary judgment is warranted regarding Feno's request for punitive damages because such relief is not available for violations of the ADA and RA. (Doc. 51, at 11-12). In response, Feno states: "Pursuant to *Barnes v. Gorman*, 536 U.S. 181, 189 (2002), [Feno] withdraws the Amended Complaint's claims for punitive damages under the ADA and RA." (Doc. 54, at 15). Accordingly, the Court will grant Moving Defendants' motion for summary judgment with respect to Feno's claim for punitive damages.

## IV.  **C**ONCLUSION

Based on the foregoing, Moving Defendants' motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**. (Doc. 49). To the extent that Feno seeks to

assert a cause of action against them under Title I of the ADA, such claim is **DISMISSED WITH PREJUDICE**. In addition, Feno's claims for punitive damages is **DISMISSED**.

An appropriate Order follows.

BY THE COURT:

Dated: March 14, 2023                    *s/ Karoline Mehalchick*
                                         **KAROLINE MEHALCHICK**
                                         **Chief United States Magistrate Judge**